IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NELLIE MELE and GERALD MELE,<br><br>       Plaintiffs,<br><br>    v.<br><br>GSA NORTHEAST DISTRIBUTION CENTER, CBRE, INC., FLUIDICS INC., and JOHN DOES (1-10),<br><br>       Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 16-3539 (JBS-KMW)<br><br><br>**OPINION** |

APPEARANCES:

William Joseph Stopper, Esq.
STOPPER LOPEZ, LLC
1763 East Marlton Pike, Suite 350
Cherry Hill, NJ 08003
    Attorney for Plaintiffs

Kristin Lynn Vassallo
Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY FOR THE DISTRICT OF NEW JERSEY
970 Broad Street
Newark, NJ 07102
    Attorney for Defendant GSA Northeast Distribution Center

Frank Anthony LaSalvia, Esq.
KENNEDY, CAMPBELL, LIPSKI & DOCHNEY
303 Lippincott Drive, Building B – Suite 310
Marlton, NJ 08053
    Attorney for Defendant CBRE, Inc.

James A. Wescoe, Esq.
WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY, LLP
305 Fellowship Road, Suite 200
Mt. Laurel, NJ 08054
    Attorney for Defendant Fluidics, Inc.

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

Plaintiff Nellie Mele (hereinafter, "Mrs. Mele") and her

husband, Gerald Mele, brought this action alleging that Mrs.

Nelle tripped and fell over a wheel chock as a result of

Defendants' negligence.[1] This matter comes before the Court on

the motions of Defendants Fluidics, Inc. (hereinafter,

"Fluidics") and CBRE, Inc. (hereinafter, "CBRE") for summary

judgment. [Docket Items 19 and 20.] For the reasons stated

herein, Fluidics' motion will be granted and CBRE's motion will

be denied.

## II.  BACKGROUND

### A.   Facts

Mrs. Mele was an employee of the Occupational Training

Center ("OTC"). At approximately 10:00 a.m. on May 20, 2014,

Mrs. Mele tripped and fell while walking into her place of

employment, an office building located at 1900 River Road in

Burlington, New Jersey. (Pl.'s Response to Interrog. ¶ 2; Mele

Dep. 73:1-6.) The fall took place as Mrs. Mele was returning to

work after her morning break while walking through a door

commonly referred to by the parties as "Door 141." Door 141

---

[1] Plaintiffs brought this action against Defendants GSA Northeast
Distribution Center, CBRE, Inc., Fluidics, Inc., and John Does
(1-10). As Plaintiffs have not identified any of the John Doe
Defendants, this Opinion only discusses Defendants GSA Northeast
Distribution Center, CBRE, Inc., and Fluidics, Inc.

would lock from the inside if allowed to fully close and could

not be propped open using the door's hinge mechanism.

(Chichilitti Dep. 25:5-11.) Accordingly, wheel chocks[2] or sticks

were often used to prop open the door, so that employees could

easily enter and exit the facility during work breaks and to

allow ventilation into the building. (Mele Dep. 98:7-99:13,

117:8-118:9.)

On the day of the fall, a wheel chock was propping open

Door 141. (Pl.'s Response to Interrog. ¶ 2.) Mrs. Mele testified

that she had previously been aware of the chock at Door 141, but

was unsure how many days it had been there prior to the date of

her fall. (Mele Dep. 98:3-6, 113:20-115:1.) Neither Mrs. Mele

nor any of Defendants' witnesses know who originally placed the

wheel chock at Door 141. (Mele Dep. 114:17-115:1, 115:22-25,

136:7-23; Chichilitti Dep. 27:18-20; Glassberg Dep. 36:14-22.)

Mrs. Mele testified that, while reentering Door 141 after

her morning break on May 20, 2014, her right foot caught the top

of the wheel chock and she fell into the door and onto the

ground. (Mele Dep. 89:2-18, 103:3-14.) Mrs. Mele claims that the

---

[2] A "wheel chock" is a rubber device generally placed under a
trailer wheel to keep the vehicle from rolling forward when
parked. (Chichilitti Dep. 26:6-19; Glassberg Dep. 36:18-37:1.)
Both Mrs. Mele and Jonathan Chichilitti testified that wheel
chocks were commonly used to keep doors ajar throughout the
facility located at 1900 River Road. (Mele Dep. 77:9-78:15;
98:3-24; Chichilitti Dep. 26:6-27:6.)

fall seriously injured her right shoulder and right hand. (Mele Dep. 57:21-58:6.) As a result of the injuries she allegedly sustained, Mrs. Mele underwent shoulder surgery in October 2014 (Mele Dep. 56:1-4), and received rehabilitation treatment in 2015. (Mele Dep. 58:7-25.) She continues to take pain and sleeping medication because of ongoing pain and numbness that she feels in her shoulder. (Mele Dep. 63:3-25, 64:19-25, 124:21-125:3, 127:19-128-16.)

At the time of the fall, Mrs. Mele was employed by OTC, which was located in a warehouse facility at 1900 River Road. (Pl.'s Response to Interrog. ¶ 2) Between December 14, 2010 and the time of the fall, the warehouse facility was owned by 1900 River Road, LLC and leased to the General Services Administration (hereinafter, "GSA"), an agency of the U.S. Government. (Exhibit B to Fluidics Summary Judgment Motion) According to the lease, 1900 River Road, LLC was "responsible for the total maintenance and repair of the leased premises" (Id. at 19, ¶ 4.11.A), and for maintaining the buildings and space in a "safe and healthful condition according to OSHA standards." (Id. at 36, ¶ 9.4.)

On or before January 1, 2010, CBRE (also referred to in contracts as "CB Richard Ellis") entered into an arrangement with 1900 River Road, LLC, whereby CBRE would act as the property manager for the building at 1900 River Road. (Glassberg

Dep. 12:9-15, 26:7-9.) Among the various roles it performed as property manager, CBRE conducted monthly inspections at the 1900 River Road facility. (Glassberg Dep. 19:20-25.)

In its capacity as 1900 River Road, LLC's "agent," CBRE subcontracted with Fluidics for maintenance services at the 1900 River Road location. (See generally Exhibit C to Fluidics Summary Judgment Motion.) Under the services contract, Fluidics' responsibilities were limited to "the operation and maintenance of the Mechanical System, Electrical System, Conveyor System, Plumbing, and General Maintenance and Miscellaneous Equipment Maintenance in the Facility." (Exhibit C to Fluidics Summary Judgment Motion, Exhibit A at ¶ 1.) In relevant part, the contract states:

> General Maintenance shall include minor painting, toilet accessories, doors, locks, ceiling tiles [and] does not include any major repairs or renovations to the Facility. Items of General Maintenance shall be performed by Fluidics at the specific request of the Client.

(Id.)

B. Procedural History

On May 5, 2016, Plaintiffs filed a complaint in the Burlington County Superior Court, Law Division against GSA Northeast Distribution Center, CBRE, and Fluidics. [Docket Item 1-1.] Mrs. Mele claims personal injury and Gerald Mele claims loss of services and consortium. [Id.] Fluidics timely removed the case to the U.S. District Court for the District of New

5

Jersey pursuant to 28 U.S.C. § 1441.[3] [Docket Item 1.] Defendant

GSA Northeast Distribution Center was subsequently dismissed by

stipulation executed by counsel for all parties and entered by

the Court on July 21, 2016, and thus no claims remain against

the United States or the GSA. [Docket Item 11.]

Fluidics and CBRE both timely filed answers, which included

counterclaims against each other and GSA Northeast Distribution

Center for contribution, indemnification, and contractual

indemnification. [Docket Items 4 and 12.] All discovery is

complete, and Fluidics and CBRE subsequently filed motions for

summary judgment, which are now pending before the Court.

[Docket Items 19 and 20.]

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial

burden of demonstrating that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). Once a properly supported

motion for summary judgment is made, the burden shifts to the

non-moving party, who must set forth specific facts showing that

there is a genuine issue for trial. Anderson v. Liberty Lobby,

---

[3] This Court has diversity jurisdiction over Plaintiffs' claims
against the remaining Defendants, CBRE, Inc. and Fluidics, Inc.,
under 28 U.S.C. § 1332. The law of New Jersey supplies the rule
of decision.

Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "need not match, item for item, each piece of evidence proffered by the movant," but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

**IV. DISCUSSION**

In a negligence action under New Jersey law, a plaintiff must establish: "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." Fernandes v. DAR Development Corp., 119 N.J. 878, 885–86 (2015). In New Jersey, "whether a duty is owed to a person injured on the premises and the extent of that duty turns upon a multiplicity of factors, including a

7

consideration of the relationship of the parties, the nature of the attendant risk, defendant's opportunity and ability to exercise reasonable care, and the public interest in the proposed solution." Geringer v. Hartz Mountain Dev. Corp., 908 A.2d 837, 842 (N.J. Super. Ct. App. Div. 2006) (citing Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110 (1993)).

Neither CBRE nor Fluidics seem to contest, for purposes of these motions, that the chock was the actual and proximate cause of Mrs. Mele's injuries, nor do they dispute that she suffered damages as a result of the fall. Rather, both Defendants argue that the evidence fails to establish that either Defendant owed Mrs. Mele a duty of reasonable care or that Defendants breached any such duty. As CBRE and Fluidics performed very different functions at the 1900 River Road facility, the Court addresses each Defendant in turn.

### 1.  CBRE

As the property manager at 1900 River Road, CBRE maintains that it had no responsibility over the control or placement of wheel chocks in doors at the facility. (Glassberg Dep. 19:20-20:24, 23:25-24:3, 36:18-22.) In fact, CBRE claims in its papers that, "[o]n the date of the incident, the chock was placed in the doorway by personnel of GSA/Occupational Training Center." (CBRE Rep. Br. at 1.) CBRE argues that, despite its role as property manager at 1900 River Road, CBRE "cannot be held liable

8

for the negligent acts of employees of [OTC] or Fluidics, Inc. who were in the course of their business and in control of the premises at the time of the incident." (CBRE Br. at 4.)

Plaintiffs, on the other hand, argue that, as the property manager at the facility who conducted monthly inspections of the premises, CBRE owed workers located at the facility a duty of reasonable care. (Pl.'s Opp. to CBRE Mot. Br. at 10.) In support of Plaintiffs' position, they cite testimony by CBRE's own Real Estate Manager, in which Mr. Glassberg said that, while he never actually saw the wheel chock propping open Door 141 prior to Mrs. Mele's injury, if he had seen the chock he "would have kicked it out of the way" because "[i]t shouldn't be holding a door open like that." (Glassberg Dep. 42:18-43:1.) Indeed, according to Mr. Glassberg, "I think somebody could get hurt [by the chock] . . . [i]f they weren't careful and walked into it and tripped." (Glassberg Dep. 43:3-6.)

Despite CBRE's naked assertion that GSA and/or OTC were responsible for placing the wheel chock at Door 141, it is not at all clear from the record who actually installed the chock at that door. The chock was installed and kept the door propped open over an extended period of time, not a one-time occurrence. Moreover, since CBRE was the property manager at the facility and was responsible for monthly safety inspections, the Court cannot find, as a matter of law, that CBRE owed Mrs. Mele and

other employees at the facility no duty to monitor or ensure safe egress through the doors at the premises, nor can the Court find that CBRE did not breach any such duty by failing to remove the chock at Door 141 during one of its monthly inspections. This is particularly so in light of Mr. Glassberg's admission that, had he seen the chock at Door 141, he would have removed it. (Glassberg Dep. 42:18-43:6.) As there are genuine issues of material fact about who placed the wheel chock at Door 141, the duty of reasonable care CBRE owed to Mrs. Mele, and whether CBRE breached any such duty, CBRE's motion for summary judgment will be denied.

### 2.   Fluidics

As described supra, Fluidics was contracted by CBRE to perform maintenance work at the 1900 River Road facility. In New Jersey, "a contractor has a duty to [third parties] . . . to carry out his undertaken work in a careful and prudent manner, and he may be responsible to third persons for their personal injuries . . . proximately caused by his failure to exercise that care." Aronsohn v. Mandara, 98 N.J. 92, 105 (1984); see also Rosenberg v. Otis Elevator Co., 841 A.2d 99, 106 (N.J. Super. Ct. App. Div. 2004 (holding that a "contractor's duty to third persons may be measured by the nature and scope of its contractual undertaking").

Fluidics argues that its work at 1900 River Road was expressly limited by the Scope of Work section in the services contract executed by Fluidics and CBRE. (See generally Exhibit C to Fluidics Summary Judgment Motion, Exhibit A at ¶ 1.) In order to carry out its maintenance work, Fluidics deployed six mechanics and engineers to perform daily, general maintenance functions at the facility. (Chichilliti Dep. 14:24-15:3.) Such maintenance work might include repairing air conditioning units and fixing lighting circuits (Chichilliti Dep. 11:19-12:7) or, as referenced in the services contract, could include fixing a defective door or lock. (Exhibit C to Fluidics Summary Judgment Motion, Exhibit A at ¶ 1.) Notably, Fluidics' Facility Manager, Jonathan Chichilliti, testified that Fluidics never utilized Door 141 for ingress or egress from the building and Fluidics never received any complaints regarding the operation of Door 141. (Chichilliti Dep. 24:9-18.) Furthermore, Mr. Chichilitti testified that, while he was aware that wheel chocks were regularly utilized to prop open doors at 1900 River Road, he did not believe Fluidics' mechanics or engineers were responsible for removing any such chocks, including the one keeping Door 141 open. (Chichilitti Dep. 26:10-27:17.) In short, Fluidics was under contract to make on-site repairs at the direction if its client, CBRE, and it had no contact with the door in question. For these reasons, Fluidics argues that it did not owe Mrs. Mele

a broad duty of "supervisory maintenance, repair, and general safekeeping of the [subject] premises," (Fluidics Rep. Br. at 2-3) (citing Compl. at ¶ 5), nor had Fluidics breached any duty it might have owed to a third party like Mrs. Mele with respect to work Fluidics actually undertook. (Fluidics Rep. Br. at 7-8.)

Plaintiffs, on the other hand, argue that:

> [I]n light of the testimony of [Mr. Glassberg] regarding the daily inspections conducted [by] Fluidics for maintenance, safety, and other issues, and the descriptions of Fluidics' responsibilities and scope of work as contained in the Fluidics service contract, Fluidics' statement that it did not . . . have any duty vis a vis the hazardously-obstructed door is materially controverted by the motion record and evidence.

(Pl.'s Opp. to Fluidics Mot. Br. at 9.) Plaintiffs maintain that the scope of Fluidics' duty of care and whether it breached any such duty are materially disputed and are both questions of fact that should be reserved to a jury. (Id. at 11.)

Under these circumstances, the Court finds that Plaintiffs have failed to establish Fluidics owed any duty to Mrs. Mele with respect to the wheel chock at Door 141. It is clear from the services contract that the scope of Fluidics' work at 1900 River Road was limited to providing general maintenance at the facility (i.e., fixing things that were broken). While it might be conceivable that Fluidics mechanics failed to properly repair one of the doors at 1900 River Road such that a wheel chock would be necessary to keep the door open, Plaintiffs produced no

such evidence that Fluidics ever made any repairs to Door 141 or that Door 141 was defective in any way. It is not a reasonable inference to assume Door 141 was propped open because it needed repairs or had been improperly repaired by Fluidics. To the contrary, Mrs. Mele testified that the only information she knew about Fluidics is that they "maintain the building" (Mele Dep. 137:25-138:7), and that the chock was in place to enable employees to pass through the door and return to work.

Because the work Fluidics was contracted to perform at 1900 River Road was expressly limited to fixing broken things and Plaintiffs produced no evidence that Door 141 was ever broken or that Fluidics employees were otherwise responsible for placing the wheel chock at Door 141, Plaintiffs have failed to establish that Fluidics owed Mrs. Mele any duty of care with respect to Door 141 or that Fluidics breached any such duty. Thus, summary judgment will be granted for Fluidics.

## V. CONCLUSION

For the reasons stated above, CBRE's motion for summary judgment is denied and Fluidics' motion for summary judgment is granted. An accompanying Order will be entered.


**December 26, 2017**          **s/ Jerome B. Simandle**
Date                           JEROME B. SIMANDLE
                               U.S. District Judge